# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDY SONG,<br><br>    Petitioner,<br><br>    v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | CASE NO.  CV 09-5184 DOC<br>               CR 98-0806 CM<br><br>**O R D E R GRANTING IN PART AND DENYING IN PART RESPONDENT'S MOTION TO DISMISS** |

Before the Court is Respondent United States of America's Motion to Dismiss. The Court finds this matter appropriate for decision without oral argument. FED. R. CIV. P. 78; Local R. 7-15. After considering the moving, opposing, and reply papers thereon, and for the reasons set forth below, the Court hereby GRANTS IN PART AND DENIES IN PART the Motion to Dismiss.

**I.    BACKGROUND**

Andy Song ("Petitioner") was born in South Korea and entered the U.S. on a C-1/D transit visa in 1987 at the age of 28. He is married to a U.S. citizen, and their two children are U.S. citizens.

On September 20, 1995, Petitioner was charged in the U.S. District Court for the Western

1  District of Washington for violations of 18 U.S.C. §§ 371 (conspiracy to commit offense or to defraud
2  the United States), 542 (entry of goods falsely classified), 545 (smuggling goods into the United States),
3  and 2320 (trafficking in counterfeit goods or services). Petitioner was alleged to have received
4  shipments from Korea, sent by Juan Chang, labeled as ladies fashion belts and other generic descriptions
5  but containing merchandise manufactured in Korea resembling brand name items.  Petitioner's case was
6  transferred to the U.S. District Court in Los Angeles, and on August 24, 1998, Petitioner entered a guilty
7  plea to 18 U.S.C. § 371 for conspiring to violate 18 U.S.C. §545 and 19 U.S.C. §1526 (importing
8  merchandise bearing an American trademark)).  The plea agreement indicated a loss of $116,946.64 to
9  the United States.  On April 12, 1999, the court sentenced Petitioner to five years probation with six
10 months home detention and restitution of $116,946.64.
11         On November 22, 2002, the Immigration & Naturalization Services ("INS") initiated removal
12 proceedings against Petitioner on the basis that his April 12, 1999 conviction was for an offense
13 involving fraud or deceit in which the loss to the victim or victims exceeds $10,000, as defined in under
14 8 U.S.C. §1101(a)(43)(M)(i), or an offense involving moral turpitude.  Petitioner now faces mandatory
15 deportation.  At a hearing on April 29, 2003 before the Immigration Court, Petitioner admitted to the
16 conviction, that the loss to the victim exceeded $10,000, and that he had been convicted of a crime
17 involving moral turpitude.  Resp. Opp. at Exh. D.  At another hearing on November 22, 2005, Petitioner
18 argued that he was not convicted of an aggravated felony, that the statute he was convicted under was
19 not fraud against the United States, and that the amount of loss was less than $10,000.  *Id.*  On February
20 14, 2006, the Immigration Judge found that Petitioner's conviction was for an offense involving fraud or
21 deceit for which the loss to the victim exceeded $10,000 and that Petitioner should be removed to
22 Korea.  *Id*.  The Board of Immigration Appeals affirmed this holding without opinion on October 11,
23 2007.  *Id.*  Petitioner then filed a further appeal with the Ninth Circuit, which is still pending.  *Song, et
24 al. v. Holder*, Case No. 07-74265.
25         Petitioner filed a writ of error coram nobis with this Court on July 16, 2009.  Petitioner alleges
26 that he was actually innocent of the charge of fraudulent importation.   Petitioner alleges that he
27 conspired to infringe upon trademarks that were not licensed for use by him, but did not conspire to
28 defraud the United States by avoiding the payment of duty on expensive brand-name goods.  Petitioner

also alleges that he did not intend any loss to the United States.

Petitioner alternatively alleges a claim for ineffective assistance by his trial counsel. He alleges that his counsel did not advise him of the immigration ramifications of his plea and failed to . Additionally, Petitioner's counsel failed to fully examine and ensure the accuracy of the plea, which Petitioner incorrectly portrayed Petitioner's actions, and failed to inform Petitioner that he was actually innocent of the charges to which he was pleading guilty.

Respondent, the United States, now moves to dismiss the writ on the basis that it does not satisfy the requirements for coram nobis relief because Petitioner failed to attack the conviction earlier, the petition is barred by laches, and the petition is procedurally barred for failure to bring the claims on direct appeal.[1]

## II.   DISCUSSION

The writ of error coram nobis "affords a remedy to attack a conviction when the petitioner has served his sentence and is no longer in custody," a "remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." *Estate of McKinney v. U.S.*, 71 F.3d 779, 781 (9th Cir.1995) (quotation marks and citation omitted). It "is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *U.S. v. Riedl*, 496 F.3d 1003, 1005 (9th Cir. 2007).

"To qualify for coram nobis relief, a petitioner must show that (1) a more usual remedy is not available, (2) valid reasons exist for not attacking the conviction earlier, (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III, and (4) the error is of the must fundamental character." *U.S. v. Njai*, 312 Fed. Appx. 953, 953-54 (9th Cir. 2009) (as set forth in *Hirabayashi v. U.S.*, 828 F.2d 591, 604 (9th Cir.1987)).

---

[1] Petitioner's opposition addresses the validity of the coram nobis claims beyond the three bases for the motion to dismiss, and Respondent's reply responds to Petitioner's arguments. As Respondent only moved for dismissal on three bases, the Court addresses solely those bases in this order.

3

### A. Valid Reasons for Not Attacking the Conviction Earlier

Respondent argues that Petitioner fails to meet the third requirement for coram nobis relief: that he had "valid reasons for not attacking the conviction earlier." *Njai*, 312 Fed. Appx. at 953. Petitioner argues in his opposition that the government must first demonstrate that it has been prejudiced by the delay before a court may find there were not valid reasons for the delay. Pet.'s Opp. at 8. The Ninth Circuit has explicitly rejected this argument. *Riedl*, 496 F.3d at 1007-08 (requiring government to first establish prejudice would "largely eviscerate the gate-keeping framework *Hirabayashi* articulated and open the door to inexcusably late claims.").

While coram nobis relief is not subject to a strict statute of limitations, courts have required coram nobis petitioners "to provide valid or sound reasons explaining why they did not earlier attack their sentences or convictions." *Njai*, 312 Fed. Appx. at 954 (citing *U.S. v. Kwan*, 407 F.3d 1005, 1012 (9th Cir.2005)), abrogated on other grounds by *Padilla v. U.S.*, – U.S. –, 130 S.Ct. 1473 (2010)). This requirement does not mandate a challenge at the earliest opportunity; instead, it requires only that petitioner have sound reasons for not seeking relief earlier. *Id.* (citing *Kwan*, 407 F.3d at 1014). Petitioner bears the burden to demonstrate that the reasons for delay were sound. *Reidl*, 496 F.3d at 1008.

Petitioner asserts several theories for coram nobis relief. The first is that he is actually innocent of the charge of fraudulent importation because he (1) did not fraudulently receive any merchandise and (2) did not intend any financial loss. The second theory is that he did not knowingly and intelligently enter a plea because there was a mistake on the plea agreement. Finally, he advances a theory that the assistance of his counsel was ineffective because his counsel (1) affirmatively misadvised him concerning the ramifications of his plea upon his immigration status, (2) allowed entry of a plea without fully examining the plea agreement, and (3) failed to negotiate a plea agreement without immigration consequences.

Petitioner entered the plea which he now challenges in 1998, twelve years ago. Petitioner was put on notice of his actual innocence claims and that there was a factual mistake in the plea agreement at the time of the entry of the plea agreement. Petitioner's counsel asserts that he was

1 not aware of these claims until 2008 upon advice of his post-conviction counsel. Petition at 27.
2 The actual affidavit from petitioner, however, makes no assertion regarding his ignorance of the
3 terms of his plea agreement or the factual basis for that plea.  Nor do petitioner or his counsel
4 state any facts justifying why petitioner would not have access to his plea agreement, which he
5 signed, or have known about any claims of innocence or pertaining to the plea agreement, at the
6 time of his plea.  What Petitioner does do is state changing circumstances that indicate he did not
7 care about the mistakes until it became clear that they would have consequences–his
8 deportation–that were unanticipated by him.  This is insufficient to justify delay as to the claims
9 regarding the factual mistakes in his plea agreement and his actual innocent claims.  *See Maghe*
10 *v. U.S.*, 710 F.2d 503 (9th Cir. 1983) (finding no valid basis for delay where petitioner knew
11 basis for claim for many years but had no reason to challenge the conviction until he faced
12 adverse consequence of army denial of discharge upgrade).  Petitioner has failed to meet his
13 burden in demonstrating that the reasons for delay were sound.  *Reidl*, 496 F.3d at 1008.
14 Therefore the Motion to Dismiss Petitioner's claims for actual innocence, for not freely and
15 voluntarily entering into the plea agreement, and for ineffective assistance of counsel based on
16 the failure of his counsel to fully examine the plea agreement is GRANTED.

17     As for Petitioner's claims that his counsel was ineffective for misadvising him regarding
18 the immigration ramifications of his plea and failing to negotiate a plea without immigration
19 consequences, Petitioner did not know the immigration ramifications of the plea agreement and
20 conviction until 2002, when the INS initiated removal proceedings.  He states that it was only
21 upon receiving the advice of post-conviction counsel that he was aware that his criminal counsel
22 had erred.  Pet.'s Opp. at 8.  He also states that when he was ordered removed by the
23 immigration judge in 2006, he believed that the immigration judge was in error and therefore
24 challenged the removal order with the BIA.  *Id.* at 10.  The BIA ruled in 2007, and Petitioner
25 also appealed that order to the Ninth Circuit.  The appeal is currently pending with the Ninth
26 Circuit.

27     Respondent argues that Petitioner was aware of the bases for his petition in 2002 and
28 made the same arguments to the Immigration Court that he makes now, so he could have brought

1 this petition "at a minimum, eight years ago when he made the very same arguments to the
2 Immigration Court." Mot. at 7. However, Respondent fails to distinguish or even address
3 *Kwan*, the case most on point. 407 F.3d 1005. In *Kwan*, the petitioner faced similar deportation
4 ramifications from a criminal conviction. Petitioner was notified that INS considered him
5 removable in 1997, but his immigration counsel advised him to challenge the INS' determination
6 that his conviction was an aggravated felony through immigration court. *Id.* at 1013. The Ninth
7 Circuit observed that, given his criminal counsel's previous advice that he was unlikely to be
8 deported due to the conviction, and because he "sought the advice of counsel and pursued legal
9 remedies to address the collateral consequences of his conviction during the period of delay," it
10 was reasonable for him to follow his immigration counsel's advice to challenge the
11 determination through immigration proceedings. *Id.* at 1013-14. The Ninth Circuit observed,
12 "[o]nly after the INS re-initiated removal proceedings against Kwan and determined that his
13 conviction was an aggravated felony under 8 U.S.C. § 1101(a)(43)(G) did Kwan have reason to
14 conclude that his criminal defense counsel had in fact erred." *Id.* at 1014. The court went on to
15 conclude that while it may have been prudent fro Kwan to pursue coram nobis relief earlier and
16 concurrently with challenging the immigration court's finding, he had sound reasons for not
17 doing so. *Id.*; *see also U.S. v. Lee-Yaw*, No. CR 04-5421 FDB, 2009 WL 799680 (W.D. Wash.
18 Mar. 24, 2009) (valid reason for 21-month delay in filing coram nobis petition after immigration
19 court issued final removal order where petitioner was challenging deportation order up to Ninth
20 Circuit, following holding of *Kwan*); *Qiao v. U.S.*, No. 07 Civ. 3727 (SHS) , 2007 WL 4105813
21 (S.D.N.Y. Nov. 15, 2007) (petition was timely where petitioner was challenging his removal
22 order administratively, following *Kwan* and *Yong Wong Park v. U.S.*, 222 Fed. Appx. 82 (2d Cir.
23 2007)).
24       While, as in *Kwan*, Petitioner would have been prudent to file his writ parallel to his
25 challenge of the Immigration Court's holdings, the Court finds that Petitioner had valid reasons
26 for his delay in filing the petition. Petitioner has therefore satisfied the third element for seeking
27 coram nobis relief.
28

### B. Laches

Unlike under the *Hirabayashi* framework, when evaluating an argument that a claim is barred by laches, "'the government first must make a prima facie showing of prejudice . . . If the government meets that burden, the burden of production of evidence then shifts to the petitioners to show either that the government actually was not prejudiced or that the petitioner exercised reasonable diligence in filing the claim.'" *Riedl*, 496 F.3d at 1007 (quoting *Telink, Inc. v. U.S.*, 24 F.3d 42, 47 (9th Cir. 1994)). A district court may apply laches to a coram nobis petition "if the petitioner inexcusably delays in asserting his claims *and* the government is prejudiced by the delay." *Telink*, 24 F.3d at 47. Here, the Court has found that the petitioner did not inexcusably delay in filing his petition for the remaining immigration-related claims, so even if the government has made a prima facie showing of prejudice, petitioner has been able to rebut that showing by demonstrating that he exercised reasonable diligence in filing the claim.

### C. Procedural Bar

Finally, Respondent argues that Petitioner's claims are procedurally barred because he failed to raise them on direct appeal or through a petition pursuant to 28 U.S.C. § 2255, and claims that could have been raised by direct appeal are outside the scope of the writ. *See Martinez v. U.S.*, 90 F. Supp. 2d 1072, 1076 (D. Haw. 2000) (citing, *inter alia*, *Klein v. U.S.*, 880 F.2d 250 254 (10th Cir. 1989); *U.S. v. Keane*, 852 F.2d 199, 202 (7th Cir. 1988 )). Respondent simply asserts this argument without offering any legal argument as to why Petitioner's claims could have been raised by direct appeal or habeas petition and does not set forth the time line of the termination of Petitioner's sentence. The argument is not clearly presented and is conflated with arguments regarding lack of a valid reason for the delay. *See* Mot. at 10-11 (citing *Maghe*, 710 F.2d 503). Furthermore, Respondent only makes particularized claims that Petitioner's claim of actual innocence is barred, which the Court has already disposed of, and does not articulate this theory as to the ineffective assistance of counsel claims.

### III. DISPOSITION

For the foregoing reasons, Respondent's Motion to Dismiss is GRANTED as to

7

Petitioner's claims for actual innocence, for not freely and voluntarily entering into the plea agreement, and for ineffective assistance of counsel based on the failure of his counsel to fully examine the plea agreement.  Respondent's Motion to Dismiss is DENIED as to claims that his counsel was ineffective for misadvising him regarding the immigration ramifications of his plea and failing to negotiate a plea without immigration consequences.  The Court sets further briefing as follows:

> The Government shall file its substantive opposition to the writ petition by July 19, 2010.
> Petitioner shall file his traverse/reply by August 30, 2010.

IT IS SO ORDERED.

DATED: June 3, 2010

_____
DAVID O. CARTER
United States District Judge